**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, *ex rel.* | ) | |
| MATTHEW P. DENN, | ) | |
| ATTORNEY GENERAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| PURDUE PHARMA L.P.; | ) | (Removal from Superior Court of |
| PURDUE PHARMA INC.; | ) | the State of Delaware) |
| THE PURDUE FREDERICK COMPANY; | ) | |
| ENDO HEALTH SOLUTIONS INC.; | ) | |
| ENDO PHARMACEUTICALS INC.; | ) | |
| MCKESSON CORPORATION; | ) | |
| CARDINAL HEALTH, INC.; | ) | |
| AMERISOURCEBERGEN | ) | |
| CORPORATION; | ) | |
| ANDA PHARMACEUTICALS, INC.; | ) | |
| H.D. SMITH, LLC; | ) | |
| CVS HEALTH CORPORATION; and | ) | |
| WALGREENS BOOTS ALLIANCE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367,

Defendant McKesson Corporation ("McKesson"), by counsel, has removed the above-captioned

action from the Superior Court of the State of Delaware to the United States District Court for

the District of Delaware.  As grounds for removal, McKesson states as follows:

## I.     NATURE OF REMOVED ACTION

1.     On January 19, 2018, the Attorney General of Delaware (the "DEAG" or

"Plaintiff") filed a Complaint on behalf of the State against McKesson in the Superior Court of

the State of Delaware, titled *State of Delaware, ex rel. Matthew P. Denn, Attorney General v.*

*Purdue Pharma L.P., et al*.  The Complaint asserts claims against three groups of Defendants.

The first group consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company; Endo Health Solutions Inc.; and Endo Pharmaceuticals Inc. (collectively, the "Manufacturer Defendants").   The second group consists of Cardinal Health, Inc., AmerisourceBergen Corporation,[1] H.D. Smith, LLC, Anda Pharmaceuticals, Inc., and McKesson (collectively, the "Distributor Defendants").   The third group consists of CVS Health Corporation and Walgreens Boots Alliance, Inc. (collectively, the "Pharmacy Defendants").  The court designated the case Civil Action No. N18C-01-223 MMJ CCLD.

2.      Plaintiff complains of over-distribution of prescription opioids into Delaware and that McKesson and the other Distributor Defendants distributed prescription opioids into Delaware across state lines from distribution facilities "located throughout the country."  Compl. ¶¶ 98; *see id.* ¶ 159.

3.      The Complaint asserts five counts against McKesson and the other Distributor Defendants:  Consumer Fraud (Count V); Public Nuisance (Count VI); Negligence (Count VII); Unjust Enrichment (Count VIII); and Civil Conspiracy (Count IX).  Plaintiff seeks injunctive and compensatory relief.  *See* Compl. ¶¶ 114-17, Prayer for Relief.

4.      Although Plaintiff disavows stating a federal question, Compl. ¶ 96, Plaintiff pleads, *inter alia*, that state and federal regulations under which McKesson and other Distributor Defendants operate "were designed to protect society from the harms of drug diversion . . . by creating a legal framework for distributing and dispensing controlled substances and monitoring and controlling them from manufacture through delivery to the patient."  *Id.* ¶¶ 94-95.

5.      Because the pillars of this framework, duties governing reporting and shipping "suspicious" opioid orders, arise solely from the federal Controlled Substances Act ("FCSA" or

---

[1] By consenting to this Notice of Removal, AmerisourceBergen Corporation does not concede that it is a proper party to this litigation, and it is not.

"federal CSA"), Plaintiff pleads that alleged violations of federal law form the basis for its claims.

6.      McKesson has not responded to the Complaint in state court.  McKesson's response is not due until March 30, 2018, pursuant to a stipulation among Plaintiff, McKesson, and certain other Defendants.

7.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (Sept. 25, 2017), Dkt. # 328.  McKesson intends to tag this case immediately for transfer to the MDL.

8.      In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and a copy of all process, pleadings, and orders served upon McKesson in the state court action are attached as **Exhibit A**.

## II.    TIMELINESS OF REMOVAL

9.      The DEAG served the Complaint on McKesson on or after February 8, 2018.

10.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

11.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."   28 U.S.C. § 1446(b)(2)(C).

3

III.   **PROPRIETY OF VENUE**

12.   Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

IV.   **BASIS OF REMOVAL**

13.   Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's claims present a federal question under the federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*

14.   A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id*. at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)).  *See also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing the 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower then what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

15.     More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012) held, "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." *Id.* at 749 (brackets, citations, and internal quotation marks omitted).

### A.     Plaintiff's Claims Facially Arise Under Federal Law.

16.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

17.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

18.     Federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

19.     "[T]he party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).

20.     In this case, Plaintiff relies on federal law.

21.     Specifically, Plaintiff pleads that McKesson violated federal law with, *inter alia*, the following allegations:

a.    Delaware's Uniform Controlled Substances Act ("DE CSA") and the federal CSA impose duties on distributors "designed to protect society from the harms of drug diversion . . . by creating a legal framework for distributing and dispensing controlled substances and monitoring and controlling them from manufacture through delivery to the patient." Compl. ¶ 95;

b.    As Plaintiff identifies, the DE CSA's specific contributions to that framework are limited to requirements that distributors register with the State, and establish, maintain, and adhere to written inventory management policies involving loss, theft, and "suspected criminal activities involving the inventory of a drug or drugs." *Id.* ¶¶ 104-05.  The portion of the DE CSA's implementing regulations quoted by Plaintiff requires reporting "criminal or suspected criminal activities involving the inventory of a drug or drugs" to both federal and state authorities, including the DEA when applicable. *Id*. ¶ 105 (quoting 24 *Del. Admin. C.* § 2500-8.6.4).   The DE CSA also requires that distributors maintain records about drugs received, distributed, or disposed of that the State may inspect upon request. *See id.* ¶ 164;

c.    "Like the DE CSA,[2] the FCSA sets the standard of conduct to which the Distributor Defendants must adhere.  Also like the DE CSA, the FCSA

---

[2] Because Plaintiff never identifies any provision of the Delaware Controlled Substances Act and its implementing regulations that contain any requirement analogous to the federal CSA's reporting requirement or the DEA's shipping requirement, *see Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017), Plaintiff's references in its claims to the "DE CSA" and to "state law" are surplusage.

requires all opioid distributors to maintain effective controls against opioid diversion and to employ a system to identify and report to law enforcement suspicious orders of controlled substances." *Id.* ¶ 106;

d.    "Distributor Defendants must employ a system to inform the DEA of suspicious orders." *Id.* ¶ 108 (citing only federal law); and

e.    "Distributor Defendants have supplied and continue to supply quantities of prescription opioids in and around Delaware with the actual or constructive knowledge that the opioids were ultimately being consumed by Delaware citizens for non-medical purposes. Many of these shipments should have been stopped or investigated as suspicious orders, but Distributor Defendants negligently or recklessly failed to do so." *Id.* ¶ 159 (referring again to duties created only by federal law).

22.    Plaintiff does not identify a state law source for a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Delaware government official or entity, or a state law source for a requirement that wholesale pharmaceutical distributors "stop[]" or "investigate[]" suspicious orders of controlled substances from registered pharmacies.

23.    Plaintiff thus asserts claims based on McKesson's alleged violations of legal duties that arise only under the federal CSA and its implementing regulations:

a.    McKesson allegedly violated the Delaware Consumer Fraud Act by misrepresenting or concealing the material facts that it violated federal regulations by "habitually filling suspicious or invalid orders for prescription opioids at the wholesale and retail levels," by "failing to

maintain effective controls against opioid diversion," and by "failing to operate a system to disclose suspicious orders of controlled substances." Compl. ¶¶ 263-65 (Count V);

b.     McKesson allegedly created a public nuisance by "failing to design and operate an adequate system to detect, halt, and report suspicious orders of controlled substances." *Id.* ¶ 268 (Count VI);

c.     McKesson was allegedly negligent by "inviting criminal activity into Delaware by disregarding precautionary measures built into the DE CSA and FCSA," by "failing to adhere to all applicable laws and regulations pertaining to the distribution and sale of prescription opioids," by "failing to report suspicious orders or refuse to fill them," and by "failing to police the integrity of the supply chain for prescription opioids." *Id.* ¶¶ 279-280 (Count VII); and

d.     McKesson allegedly participated in a civil conspiracy when it "continuously supplied prescription opioids to Pharmacy Defendants . . . despite Distributor Defendants and Pharmacy Defendants having actual or constructive knowledge that they were habitually breaching their common law duties and violating the DE CSA and FCSA." *Id.* ¶ 304 (Count IX).

24.     In summary, Plaintiff facially pleads in at least Counts V, VI, VII, and IX that those claims are based on alleged violations of "federal law"—namely, the federal CSA.

25.     Although plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by ***exclusive*** reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), the DEAG alleged violations of federal law as the basis for at least four counts. Those counts, V,

VI, VII, and IX, thus plead a federal question. *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("suit arises under the law that creates the cause of action").

26.     As discussed below, this federal law is a necessary, disputed, and substantial element of all Plaintiff's claims and thus presents a substantial federal question,[3] regardless of whether Plaintiff had specifically pleaded that it seeks to apply and enforce the federal Controlled Substances Act.  In Counts V, VI, VII, and IX, however, federal law is presented "on the face of [Plaintiff's] properly pleaded complaint." *Caterpillar, Inc.*, 482 U.S. at 392; *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question").

27.     Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiff's counts against them raise a federal question.  Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction:  "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").  The law is clear, and Defendants will argue here, that there is no private right of action under the CSA (and that the federal CSA cannot form the basis for any state law claims), although the absence of a private right of action does not diminish the substantiality of the federal question. *See infra* n.6.

28.    Because the Court has original jurisdiction over Counts V, VI, VII, and IX, it has supplemental jurisdiction over Plaintiff's remaining counts against McKesson, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

**B.    Plaintiff's Claims All Depend On A Substantial Question Of Federal Law.**

29.    Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law."  *Merrell Dow*, 478 U.S. at 808-09 (internal quotations and citation omitted); *see Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

30.    "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn* 568 U.S. at 258; *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005)*; see also M.K. by & through Barlowe K. v. Prestige Acad. Charter Sch.*, C.A. No, 17C-1135, 2018 WL 650193, at *5 (D. Del. Jan. 31, 2018) (summarizing four factors for federal jurisdiction over state law claims under *Grable*).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  *Gunn*, 568 U.S. at 258.

31.    As set forth below, this case meets all four requirements.  Although Plaintiff ostensibly pleads some of its theories of recovery against McKesson as state law claims, it expressly premises the underlying theory of liability on McKesson's alleged violations of federal

law or alleged duties arising out of federal law, specifically the federal CSA, *i.e.*, that some portion of their otherwise lawful shipments of prescription opioids were unlawful because they were of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.[4]

32.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the federal CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* 21 C.F.R. § 1301.74; Compl. ¶ 108 (citing only 21 C.F.R. § 1301.74 as basis for alleged requirement to "employ a system to inform the DEA of suspicious orders").

33.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters*, 861 F.3d at 212-13 (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

34.     Plaintiff's theories of liability against McKesson, as pled in the Complaint, are predicated on allegations that McKesson breached alleged duties under the federal CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and not to ship such orders to Delaware pharmacies.  *See, e.g.*, Compl. ¶ 263 (alleging McKesson misrepresented or concealed material facts relating to its alleged noncompliance with

---

[4] Similar to the claims asserted against McKesson and the other Distributor Defendants, the claims asserted against the Pharmacy Defendants are based in significant part on federal law as well.  *See* Compl. ¶¶ 124-31.

requirements imposed only by federal law, such as "habitually filling suspicious or invalid orders" and "failing to operate a system to disclose suspicious orders"; *id.* ¶ 268 (alleging McKesson violated FCSA's reporting and shipping requirements by "failing to design and operate an adequate system to detect, halt, and report suspicious orders of controlled substances"); *id.* ¶ 280 (alleging McKesson failed to uphold duties arising from FCSA by "failing to report suspicious orders or refuse to fill them" and "failing to police the integrity of the supply chain for prescription opioids"; *id.* ¶ 304 (alleging McKesson contributed to civil conspiracy by "continuously supply[ing] prescription opioids" in knowing violation of the FCSA, the only law cited by Plaintiff containing shipping requirements).  Plaintiff does not and cannot identify a state law source for alleged duties to identify, report, and not ship suspicious orders of controlled substances.[5]

35.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

---

[5]  Plaintiff's citations to Delaware law that purportedly impose shipping and reporting requirements on McKesson nowhere identify state law that imposes such requirements on a wholesale distributor.  Although Plaintiff also cites Delaware controlled substances laws that incorporate federal controlled substances law, *see, e.g.*, Compl. ¶ 39, this incorporation supports the conclusion that Plaintiff's claims present a substantial federal question.  *See, e.g., West Virginia* ex rel. *McGraw v. Eli Lilly & Co.*, 476 F. Supp.2d 230, 233-34 (E.D.N.Y. 2007) (WVAG's state-law claims stated substantial federal question because claimed damages arose from State's coverage of Zyprexa mandated by federal Medicaid law); *In re Pharm. Indus. Average Wholesale Price Litig. (Fla.)*, 457 F. Supp. 2d 65, 74 (D. Mass. 2006) (remanding action because, *inter alia*, defendants failed to show that Florida law incorporated federal definition of "average wholesale price;" finding that lack of evidence that Florida adopted federal definition meant that same phrase in state law could be defined without presenting federal question); *In re Pharm. Indus. Average Wholesale Price Litig. (Ariz.)*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) ("meaning of A[verage] W[holesale] P[rice] in the federal Medicare statute is a substantial federal issue that properly belongs in federal court").

36.     <u>First</u>, Plaintiff's state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law ***or if the action requires construction of a federal statute***, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

37.     As pled, Plaintiff's claims against McKesson require Plaintiff to establish that McKesson breached duties under federal law by failing to report and stop shipments of otherwise lawful orders of controlled substances into Delaware.  Therefore, the Complaint necessarily raises a federal issue—namely, whether McKesson violated the federal CSA.

38.     <u>Second</u>, this federal issue is "actually disputed" because the parties disagree as to whether McKesson violated its duties that arise only under the federal CSA.  Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

39.     <u>Third</u>, the federal issue presented by Plaintiff's claims is "substantial."  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal

law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal

forum offers on federal issues."  545 U.S. at 312.

40.     Plaintiff's theories of McKesson's liability necessarily require that a court

determine the scope of McKesson's obligations under federal law, as the regulation of controlled

substances is first and foremost federal regulation.  Compl. ¶ 94-95 (pleading that federal laws

and regulations under which McKesson operates "were designed to protect society from the

harms of drug diversion . . . by creating a legal framework for distributing and dispensing

controlled substances and monitoring and controlling them from manufacture through delivery to

the patient."); *id.* ¶ 99 (pleading that McKesson's distribution into Delaware was across state

lines from distribution facilities "throughout the country").  Indeed, Congress designed the FCSA

with the intent of reducing illegal diversion of controlled substances, "while at the same time

providing the legitimate drug industry with a ***unified approach*** to narcotic and dangerous drug

control."  H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N.

4566, 4571-72 (emphasis added).

41.     Plaintiff's theories of McKesson's liability thus "involve aspects of the complex

federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v.

Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the

development of a uniform body of [controlled substances] regulation to satisfy the requirement

of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,

770 F.3d 1010, 1024 (2d Cir. 2014).[6]   The FCSA itself notes that "the illegal importation,

---

[6] The State's attempt to enforce the FCSA raises a substantial federal question even though the
FCSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme Court held
that lack of a federal cause of action does ***not*** foreclose federal-question jurisdiction.  The Court
stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent,"
and "convert[ ] a federal cause of action from a sufficient condition for federal-question

manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the FCSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (plaintiff's state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

42.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 400 similar actions nationwide, most of which are pending in a MDL in the Northern District of Ohio. Indeed, Plaintiff pleads that both the "opioid epidemic" and the alleged improper distribution of prescription opioids by McKesson and other Distributor Defendants are "nationwide" problems. Compl. ¶¶ 3, 158, 196, 303. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[7]

43.     Fourth, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

---

jurisdiction into a necessary one." *Grable*, 545 U.S. at 316; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal question and satisfy *Grable* even though no private right of action exists under Act).

[7] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the FCSA—DEA—applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

44.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL

1752954, at *5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

45.     To the extent that the Court determines that some, but not all, of Plaintiff's counts in the Complaint state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), or whether to sever and remand the claims against the Manufacturer Defendants under Federal Rule of Civil Procedure 21 and/or the fraudulent misjoinder doctrine.  *See, e.g.*, *Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702 (D. Md. 2015).

## V.   OTHER REMOVAL ISSUES

46.     Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

47.     The other defendants that have been served in this action are Cardinal Health, Inc., AmerisourceBergen Corporation, Anda Pharmaceuticals, Inc.,[8] Purdue Pharma, L.P., The Purdue Frederick Company, Endo Health Solutions Inc., Endo Pharmaceuticals Inc., CVS Health Corporation, and Walgreens Boots Alliance, Inc.

48.     All defendants consent to removal, as indicated by their signing below.

49.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where suit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff's counsel.

---

[8] Defendant Anda Pharmaceuticals, Inc.'s agent for service for process received the Summons and Complaint via certified mail on February 12, 2018.  Anda does not concede that service was proper and effective.

50.     McKesson files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff.

51.     McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action, pending in the Superior Court of Delaware as Civil Action No. N18C-01-223 MMJ CCLD, to this Court.


March 9, 2018                                          _/s/ Michael A. Barlow_____
                                                      A. Thompson Bayliss (#4379)
OF COUNSEL:                                            Michael A. Barlow (#3928)
Neil K. Roman                                         David A. Seal (#5992)
COVINGTON & BURLING LLP                               ABRAMS & BAYLISS LLP
The New York Times Building                           20 Montchanin Road, Suite 200
620 Eighth Avenue                                     Wilmington, Delaware  19807
New York, NY 10018                                    (302) 778-1000
(212) 841-1000                                        bayliss@abramsbayliss.com
nroman@cov.com                                        barlow@abramsbayliss.com
                                                      seal@abramsbayliss.com

                                                      *Attorneys for Defendant*
                                                      *McKesson Corporation*

## CONSENT OF OTHER DEFENDANTS

| | |
|---|---|
| OF COUNSEL:<br>Mark S. Cheffo<br>Hayden A. Coleman<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000 | /s/ Jenness E. Parker<br>Jenness E. Parker (#4659)<br>SKADDEN, ARPS, SLATE, MEAGHER &<br>FLOM LLP<br>One Rodney Square<br>P.O. Box 636<br>Wilmington, Delaware 19899<br>(302) 651-3000<br>jenness.parker@skadden.com<br><br>*Attorneys for Defendants Purdue Pharma<br>L.P., Purdue Pharma Inc., and The Purdue<br>Frederick Company* |
| OF COUNSEL:<br>John A. Freedman<br>ARNOLD & PORTER KAYE SCHOLER<br>LLP<br>601 Massachusetts Avenue NW<br>Washington, DC 20001<br>(202) 942-5316 | /s/ Michael P. Kelly<br>Michael P. Kelly (#2295)<br>MCCARTER & ENGLISH, LLP<br>405 North King Street, 8th Floor<br>Wilmington, Delaware 19801<br>(302) 984-6301<br>mkelly@mccarter.com<br><br>*Attorneys for Defendants Endo Health<br>Solutions Inc. and Endo Pharmaceuticals Inc.* |
| OF COUNSEL:<br>Enu Mainigi<br>Jennifer G. Wicht<br>Steven Pyser<br>Ashley Hardin<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>(202) 434-5331 | /s/ David A. Felice<br>David A. Felice (#4090)<br>BAILEY & GLASSER, LLP<br>Red Clay Center at Little Falls<br>2961 Centerville Road, Suite 302<br>Wilmington, Delaware 19808<br>(302) 504-6333<br>felice@baileyglasser.com<br><br>*Attorneys for Defendant Cardinal Health, Inc.* |

OF COUNSEL:
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100

Alvin L. Emch
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
(304) 340-1000

  /s/ Jennifer C. Wasson
Jennifer C. Wasson (#4933)
Jesse L. Noa (#5973)
POTTER ANDERSON & CORROON LLP
Hercules Plaza - Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
jwasson@potteranderson.com
jnoa@potteranderson.com

*Attorneys for Defendant AmerisourceBergen
Corporation*

  /s/  Thomas E. Hanson, Jr.
Thomas E. Hanson, Jr. (#4102)
BARNES & THORNBURG LLP
1000 N. West Street, Suite 1500
Wilmington, Delaware 19801
(302) 300-3447
thanson@btlaw.com

*Attorney for Defendant H.D. Smith, LLC*

OF COUNSEL:
Eric R. Delinksky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street NW
Washington, D.C. 20036
(202) 778-1831

  /s/  Daniel B. Rath
Daniel B. Rath (#3022)
Rebecca L. Butcher (#3816)
Jennifer L. Cree (#5919)
LANDIS RATH & COBB LLP
919 N. Market St., Suite 1800
Wilmington, Delaware 19801
(302) 467-4400
rath@lrclaw.com
butcher@lrclaw.com
cree@lrclaw.com

*Attorneys for Defendant CVS Health
Corporation*

OF COUNSEL:                              /s/ Beth Moskow-Schnoll
Kaspar Stoffelmayr                     Beth Moskow-Schnoll (#2900)
BARTLIT BECK HERMAN                     BALLARD SPAHR LLP
PALENCHAR & SCOTT LLP                   919 North Market Street, 11th Floor
54 West Hubbard Street, Ste. 300       Wilmington, Delaware 19801
Chicago, Illinois 60654                (302) 252-4465
(312) 494-4400                         moskowb@ballardspahr.com

                                       *Attorneys for Defendant Walgreens Boots
                                       Alliance, Inc.*


OF COUNSEL:                              /s/ Jami B. Nimeroff
James W. Matthews                      Jami B. Nimeroff (#4049)
FOLEY & LARDNER LLP                     BROWN McGARRY NIMEROFF LLC
111 Huntington Ave.                    901 N. Market Street, Suite 1300
Boston, MA 02109                       Wilmington, DE 19801
(617) 502-3298                         (302) 428-8142
                                       jnimeroff@bmnlawyers.com

                                       *Attorneys for Anda Pharmaceuticals, Inc.*