## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STATE OF DELAWARE, *ex rel.* MATTHEW P. DENN, **Attorney General of the State of Delaware,** | |
| **PLAINTIFF,** | |
| v. | C.A. No. 18-383-RGA |
| **PURDUE PHARMA L.P., PURDUE PHARMA INC., THE PURDUE FREDERICK COMPANY, ENDO HEALTH SOLUTIONS INC., ENDO PHARMACEUTICALS INC., MCKESSON CORPORATION, CARDINAL HEALTH, INC., AMERISOURCEBERGEN CORPORATION, ANDA PHARMACEUTICALS, INC., H. D. SMITH, LLC, CVS HEALTH CORPORATION, and WALGREENS BOOTS ALLIANCE, INC.,** | **(Removal from Superior Court of the State of Delaware)** |
| **DEFENDANTS.** | |

## REPLY BRIEF IN FURTHER SUPPORT OF
## DELAWARE'S MOTION TO REMAND

Date:  March 26, 2018

OF COUNSEL:

Scott D. Gilbert
Richard Shore
Mark A. Packman
Michael B. Rush (#5061)
Jenna A. Hudson
GILBERT LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
gilberts@gotofirm.com
shorer@gotofirm.com
packmanm@gotofirm.com
rushm@gotofirm.com
hudsonj@gotofirm.com

Ryan P. Newell (#4744)
Kyle Evans Gay (#5752)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 757-7300
Facsimile:  (302) 757-7299
rnewell@connollygallagher.com
kgay@connollygallagher.com

*Attorneys for the State of Delaware,* ex rel.
*Matthew P. Denn, Attorney General of the*
*State of Delaware*

Richard W. Fields
FIELDS PLLC
1700 K Street, NW, Suite 810
Washington, DC 20006
fields@fieldslawpllc.com

## <u>TABLE OF CONTENTS</u>

I.      The Burden is on McKesson to Demonstrate Federal Question Jurisdiction. ..................... 1

II.     Delaware Does Not Allege Any Federal Causes of Action. ............................................... 2

III.    Delaware's Statutory and Common Law Claims Do Not Arise Under Federal Law. ........ 3

      A.     Delaware's Partial Reliance on Federal Statutes—as an Element of its State Causes of Action—Does Not Create Federal Question Jurisdiction. .................... 3

      B.     Application of the *Grable* Factors Demonstrates the Lack of Federal Question Jurisdiction. ................................................................................................................ 4

             1.     The References to Federal Law Are Not Necessarily Raised. ................... 5

             2.     The Referenced Federal Laws Are Not Actually Disputed. ..................... 7

             3.     The References to Federal Law Are Not Substantial ................................. 8

             4.     Federal Jurisdiction Would Disrupt the Federal-State Balance. ................ 9

IV.    The Court Should Not Defer Ruling on Delaware's Motion to Remand. ........................ 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. DLG Dev. Corp.*,
  2017 WL 4776754 (E.D. Pa. Oct. 23, 2017)........................................................................5

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006)..............................................................................................1, 5, 8, 9

*Goldman v. Citigroup Glob. Mkts., Inc.*,
  834 F.3d 242 (3d Cir. 2016)...................................................................................................7

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005)....................................................................................................... *passim*

*Gunn v. Minton*,
  568 U.S. 251 (2013)......................................................................................................2, 8, 9

*Kinetic Dev. LLC v. Sky Unlimited LLC*,
  2017 WL 5623512 (D. Colo. Nov. 22, 2017) ...........................................................4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994).......................................................................................................1

*Little v. Purdue Pharma, L.P.*,
  227 F. Supp. 2d 838 (S.D. Ohio 2002) ................................................................4

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
  772 F.3d 158 (3d Cir. 2014), *aff'd*, 136 S. Ct. 1562 (2016) ...................................2

*McCallister v. Purdue Pharma, L.P.*,
  164 F. Supp. 2d 783 (S.D.W. Va. 2001)................................................................4

*Merrell Dow Pharm. v. Thompson*,
  478 U.S. 804 (1986)...............................................................................1, 2, 3, 9

*MHA LLC v. HealthFirst, Inc.*,
  629 F. App'x 409 (3d Cir. 2015) ............................................................................2

*West Virginia* ex rel. *Morrisey v. McKesson Corp.*,
  No. 2:17-cv-03555, slip op. (S.D.W. Va. Feb. 15, 2018) ...........................................5

*West Virginia* ex rel. *Morrissey v. McKesson Corp.*,
  2017 WL 357307 (S.D.W. Va. Jan. 24, 2017)...................................................4, 10

*Murray v. AT&T Mobility*,
   2008 WL 4324450 (C.D. Ill. Sept. 27, 2008) ...........................................................................2

*Peckens v. Rite Aid of W. Va., Inc.*,
   2011 WL 2938454 (N.D.W. Va. July 19, 2011)........................................................................4

*Stout v. Novartis Pharm., Corp.*,
   2009 WL 4576130 (D.N.J. Nov. 30, 2009) ...............................................................................8

**Statutes**

16 Del. C. § 4735 .................................................................................................................................6

Controlled Substances Act, 21 U.S.C. §§ 801–971 .............................................................. *passim*

Plaintiff State of Delaware, *ex rel.* Matthew P. Denn, Attorney General of the State of Delaware, submits this Reply Brief in Further Support of its Motion to Remand and in response to Removing Defendant McKesson Corporation's ("McKesson") Opposition to Motion to Remand ("Opposition").  McKesson's Opposition fails as a matter of both fact and law.  It rests on the false premise that Delaware's claims rely solely on a federal duty to report and halt suspicious orders of opioids.  In fact, the State's complaint relies extensively on pure state law. It refers to federal law as just one of many sources of the standards that apply to the defendants' conduct.  McKesson also fails to rebut case law holding that references to federal law such as those in the State's complaint do not establish federal jurisdiction.  As the Supreme Court stated in a case directly on point, allegations of "a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation," do not create federal question jurisdiction.  *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 817 (1986).  McKesson's contention that the Supreme Court limited *Merrell Dow* in the *Grable* case flat-out misreads *Grable*, where the Court noted that its ruling was very narrow and would not apply in situations where, as here, the exercise of federal jurisdiction would "herald[] a potentially enormous shift of traditionally state cases into federal courts."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005).

I.      **The Burden is on McKesson to Demonstrate Federal Question Jurisdiction.**

McKesson is wrong when it contends that it does not bear the burden of establishing this Court's jurisdiction.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It ignores Supreme Court precedent establishing that federal jurisdiction is disfavored for cases that are "fact-bound and situation specific" or which involve substantial questions of state as well as federal law.  *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).  It asserts that "the Supreme Court has called into question any artificial presumption

against federal question jurisdiction,"[1] but as the State made clear in its remand motion, the cases

McKesson relies on are inapposite.[2]  McKesson makes no attempt to rebut Delaware's

arguments and simply ignores the Supreme Court precedent cited above.

## II.   Delaware Does Not Allege Any Federal Causes of Action.

Cases present a federal question when either (1) "federal law creates the cause of action

asserted," or (2) asserted causes of action "arise under" federal law.  *Manning v. Merrill Lynch*

*Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014), *aff'd*, 136 S. Ct. 1562 (2016)

(quoting *Gunn v. Minton*, 568 U.S. 251, 256 (2013)).  McKesson contends that Delaware's

Complaint presents a federal question under both of these scenarios.  McKesson is wrong.

Under the first scenario, a federal cause of action must be found on the face of the

complaint.  *See, e.g.*, *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986);

*MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015); *Murray v. AT&T Mobility*,

2008 WL 4324450 (C.D. Ill. Sept. 27, 2008).  There are none here.  Specifically, Delaware's

consumer fraud claim is brought pursuant to a Delaware, not a federal, statute, and Delaware's

remaining claims against McKesson are plainly state common law claims.[3]

McKesson's contention that Delaware's complaint satisfies the first basis for federal

jurisdiction because it refers to the Controlled Substances Act, 21 U.S.C. §§ 801–971 ("CSA")

confuses the two scenarios for federal question jurisdiction and, instead, essentially reargues the

"arise under" analysis.  As Delaware's Complaint asserts only state—not federal—claims,

federal jurisdiction exists only if Delaware's claims "arise" under federal law.  As discussed in

the State's Opening Brief and below, they do not.

---

[1] Opposition at 6 (citations omitted).
[2] *See* Opening Br. in Supp. of Del.'s Mot. to Remand at 6, n.8.
[3] *See* Compl. ¶¶ 262–311.

III.    **Delaware's Statutory and Common Law Claims Do Not Arise Under Federal Law.**

McKesson contends that federal question jurisdiction exists because Delaware supposedly relies entirely on federal law to support the claims asserted against McKesson and there are no corollary state laws that impose similar duties.[4]  As demonstrated in Section III.B.1, *infra*, this contention is simply not true.  But even if it were true, any references to federal statutes to establish McKesson's duties under state law do not establish federal jurisdiction.

A.    **Delaware's Partial Reliance on Federal Statutes—as an Element of its State Causes of Action—Does Not Create Federal Question Jurisdiction.**

As discussed in Delaware's Opening Brief, the Supreme Court's ruling in *Merrell Dow* squarely rebuts McKesson's argument that Delaware's references to the CSA create a federal question.[5]  In *Merrell Dow*, the Supreme Court held that allegations of "a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'"  *Merrell Dow* at 817.

McKesson's contention that *Merrell Dow* was limited by the Supreme Court's subsequent decision in *Grable* is incorrect.  *Grable* actually strengthens Delaware's argument that the CSA references are not a basis for federal jurisdiction.  The Supreme Court was concerned in *Grable* that the exercise of federal jurisdiction over traditional state-law claims due to the presence of a federal issue would "herald[] a potentially enormous shift of traditionally state cases into federal courts."  *Id*. at 319.  Although it ruled in favor of federal jurisdiction under the facts of that case, the Court concluded that "it is the rare state quiet title action that involves contested issues of federal law."  *Id*.  Delaware's claims against McKesson are an

---

[4] *See, e.g.*, Opposition at 3; *id*. at 8.
[5] Opening Br. in Supp. of Del.'s Mot. to Remand at 10–11.

entirely different story.  Treating traditional state-law claims such as negligence and nuisance as arising under federal law merely because of references to federal-law standards of conduct would herald the enormous shift of cases into federal courts that the *Grable* Court warned against.

McKesson makes no meaningful attempt to distinguish the subsequent federal cases cited in Delaware's Opening Brief that demonstrate that federal jurisdiction is not created by mere references to federal law in support of state law claims.  Federal courts have held repeatedly that references to the CSA, the same statute McKesson argues establishes federal jurisdiction here, do not create federal jurisdiction.  *See Kinetic Dev. LLC v. Sky Unlimited LLC*, 2017 WL 5623512, at *4 (D. Colo. Nov. 22, 2017); *Peckens v. Rite Aid of W. Va., Inc.*, 2011 WL 2938454, at *3 (N.D.W. Va. July 19, 2011); *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838 (S.D. Ohio 2002); *McCallister v. Purdue Pharma, L.P.*, 164 F. Supp. 2d 783, 793–94 (S.D.W. Va. 2001).[6] In fact, McKesson recently had this very same argument rejected in the United States District Court for the Southern District of West Virginia.  *West Virginia* ex rel. *Morrissey v. McKesson Corp.*, 2017 WL 357307, at *6–8 (S.D.W. Va. Jan. 24, 2017).  The case law uniformly rejects McKesson's position, and this Court should do likewise.

### B.  Application of the *Grable* Factors Demonstrates the Lack of Federal Question Jurisdiction.

In light of the above, it is clear that there is no federal question jurisdiction here, and thus it is not necessary for the Court to apply the *Grable* factors.  Nevertheless, application of those factors further demonstrates that remand is required.  Under *Grable*, state-law causes of action may "arise under" federal law for the purpose of federal question jurisdiction when a federal

---

[6] McKesson attempts to distinguish *Little* and *McCallister* on grounds that they predate *Grable*. *See* Opposition at 18.  However, a review of the cases demonstrates those courts applied a test similar to that used in *Grable*.  *See Little*, 227 F. Supp. 2d at 858; *McCallister*, 164 F. Supp. 2d at 793.

4

issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *See Grable*, 545 U.S. 308, 312.  It is important to note that the Supreme Court has made clear that this doctrine applies only to a "special and small category" of cases.  *See Empire Healthchoice*, 547 U.S. at 699.  This case does not fit within that category, as exercising federal question jurisdiction over the State's claims would open the door to federal question jurisdiction over a high volume of traditional common law claims, such as negligence and nuisance.

### 1.     The References to Federal Law Are Not Necessarily Raised.

A federal issue is "necessarily raised" when resolution of the issue is required for the plaintiff to prevail and the alleged federal issue is a necessary element of one of the well-pleaded claims.  *Ali v. DLG Dev. Corp.*, 2017 WL 4776754, at *5 (E.D. Pa. Oct. 23, 2017).  In contrast, where, as here, a complaint alleges multiple theories of liability, some of which do not implicate duties found in federal law, there is no federal question jurisdiction.  *See, e.g.*, *West Virginia* ex rel. *Morrisey v. McKesson Corp.*, No. 2:17-cv-03555, slip op. at 13 (S.D.W. Va. Feb. 15, 2018).[7]

McKesson does not dispute this point.  Instead, it contends that Delaware's claims rely solely on McKesson's duty to report and halt suspicious orders, a duty McKesson asserts arises only out of the federal CSA.  Yet a review of each of Delaware's claims asserted against McKesson demonstrates that they rely on far more than this federal duty.

As an initial matter, Delaware law creates an independent duty to report and halt suspicious orders.  For instance, in order to obtain a registration to distribute controlled substances in Delaware, the State will consider whether an entity maintains "effective controls against diversion of controlled substances into other than legitimate medical, scientific or

---

[7] Attached as Exhibit A to Delaware's Opening Brief.

industrial channels." 16 Del. C. § 4735 (b)(1).  Failure to maintain these effective controls can lead to the limitation, suspension, or revocation of the entity's registration.  16 Del. C. § 4735.  A duty to halt and report suspicious orders is subsumed within the obligation to prevent the diversion of controlled substances and is, thus, a duty created by state law.

Regardless, as illustrated below, each of Delaware's claims asserted against McKesson relies on more than McKesson's duty to halt and report suspicious orders; each is firmly rooted in state law and facts necessary to establish state-law violations:[8]

**Count V (Consumer Fraud)**  This claim asserts that McKesson misrepresented material facts or suppressed, concealed or omitted material facts by, among other things:  (a) failing to maintain necessary records of opioid transactions; (b) failing to implement effective business practices to guard against diversion of opioids; and (c) turning a blind eye to the sale of prescription opioids to Delaware citizens that far exceeds the number of prescriptions that could reasonably have been used for legitimate medical purposes.  *See* Compl. ¶ 263.

**Count VI (Nuisance)**  This claim asserts that McKesson created a public nuisance by, among other things:  (a) facilitating the diversion of prescription opioids by distributing them from premises in and around Delaware to unauthorized users in Delaware; and (b) failing to implement effective controls and procedures to guard against theft, diversion, and misuse of controlled substances from legal supply chains.  *Id*. ¶ 268.

**Count VII (Negligence)**  This claim alleges that, among other things, McKesson committed the following negligent acts:  (a) oversupplying the Delaware market with highly

---

[8] McKesson concedes that Count VIII (Unjust Enrichment) does not arise under federal law.  *See* Opposition at 12.  Counts I–IV are against manufacturer defendants only, and McKesson does not rely on those counts in arguing for federal question jurisdiction.  In any event, they, like the other counts discussed in the text, are firmly rooted in state law.

addictive prescription opioids; (b) using unsafe distribution practices; (c) enhancing the risk of harm from prescription opioids by failing to prevent diversion; (d) inviting criminal activity into Delaware by disregarding precautionary measures built into the Delaware CSA; (e) failing to adhere to applicable laws and regulations pertaining to the distribution of opioids; (f) failing to train or investigate their employees properly; and (g) failing to provide effective controls and procedures to guard against theft and diversion of controlled substances.  *Id.* ¶ 280.

**Count IX (Civil Conspiracy)**  This claim alleges that, among other things, McKesson unlawfully conspired with the other defendants to commit the violations described above.  As those other counts rely on more than a duty to report and halt suspicious orders created in part by reference to federal law, so too does this conspiracy claim.  *Id.* ¶¶ 302–11.

None of the theories or allegations described above depend on McKesson's duty to report or halt suspicious orders.  Thus, even if McKesson's duty to report and halt suspicious orders arose solely out of federal law (it does not) or if Delaware's assertion of this duty, pleaded alone, could create federal jurisdiction (it does not), the fact that Delaware relies on alternative theories and allegations constitutes yet another reason why remand is required.

### 2.    The Referenced Federal Laws Are Not Actually Disputed.

McKesson contends that a federal issue is "actually disputed" here because the "parties contest whether Distributors violated the CSA and whether Plaintiff may assert claims for alleged violations of the CSA."[9]  Whether a federal law is "actually disputed" refers to whether there is a dispute over the meaning of a statute or regulation as opposed to whether it applies to the defendants' conduct.  *See Goldman v. Citigroup Glob. Mkts., Inc.*, 834 F.3d 242, 257 (3d Cir. 2016) (no question of federal law is "actually disputed" because the fundamental dispute is

---

[9] Opposition at 12.

factual); *Stout v. Novartis Pharm., Corp.*, 2009 WL 4576130, at \*4 (D.N.J. Nov. 30, 2009)
(noting that "an actual dispute respecting *the interpretation* of federal law must be ascertainable
at the removal stage in order for the Court to assert federal question jurisdiction" (emphasis
added)).

McKesson does not identify an actual dispute over interpretation; rather it contends that
there is no distinction between "interpreting" federal law and "applying" it.[10]  Not only is this
contrary to the foregoing cases, but the two cases McKesson cites have nothing to do with the
"actually disputed" element, nor do they involve the jurisdictional questions raised by
McKesson's removal and at issue in the State's motion to remand.  Thus, they are inapplicable
and unhelpful.  McKesson also claims that the Supreme Court recognized that a federal issue is
actually disputed where it requires "***application*** of [federal] patent law to the facts of [the]
case."[11]  But McKesson's quote comes from the *Gunn* Court's discussion of the "necessarily
raised" element, not the "actually disputed" element.  In *Gunn*, although the Court concluded
that the federal issue was actually disputed, this was only because the issue was a purely legal
one—whether an "experimental use" exception applied to provisions of patent law that specified
an inventor was not entitled to a patent if an invention was on sale for more than one year prior
to the date of the patent application.  *Gunn*, 568 U.S. at 253.

Here, McKesson raises no argument that the interpretation of the CSA is in dispute.
Accordingly, it cannot establish the "actually disputed" factor under *Grable*.

### 3.      The References to Federal Law Are Not Substantial.

As noted in Delaware's Opening Brief, the Supreme Court has held that "it takes more
than a federal element 'to open the 'arising under' door.'"  *Empire Healthchoice*, 547 U.S. at 701

---

[10] Opposition at 12
[11] Opposition at 13 (citing *Gunn v. Minton*, 568 U.S. 251, 259 (2013)) (emphasis in Opposition).

(citation omitted).  Instead, in analyzing whether the alleged federal issue is substantially important to the federal system as a whole, the Supreme Court has suggested three factors to consider:  (1) whether the issue will have a broad impact on the Federal Government, *Gunn*, 568 U.S. at 260; (2) whether the issue presents a pure legal question, *Empire Healthchoice*, 547 U.S. at 700; and, (3) whether federal law underlying the issue provides for a federal cause of action. *Grable*, 545 U.S. at 318.  None of these factors are present here.

McKesson contends that the alleged federal issues are substantial because:  (1) there is a federal interest in ensuring uniform interpretation of the CSA; and, (2) the federal government has expressed an interest in interpreting and applying the CSA in this litigation.[12]  Both arguments relate to concerns that allowing state courts to interpret the CSA could lead to inconsistent interpretations.  However, in *Merrell Dow*, the Supreme Court rejected this same argument and held that any such concerns were addressed by the fact that the Court retained the power to review the decision of a federal issue in a state cause of action.  478 U.S. at 816.[13]

### 4.    Federal Jurisdiction Would Disrupt the Federal-State Balance.

McKesson does not dispute that a ruling in favor of federal question jurisdiction here would open the floodgates to the federal courts for cases involving state-law negligence and nuisance claims that simply refer to federal laws or regulations.  It cannot be disputed that this would greatly disrupt the federal state-balance.  McKesson does not meaningfully address this point; it simply offers the non-sequitur that federal courts "exclusively hear challenges to DEA authority" and have "exclusive jurisdiction over proceedings seeking to enjoin violations of the CSA."[14]  This case does not involve either of these scenarios.  The fact that the federal courts

---

[12] Opposition at 14–16.
[13] McKesson offers no explanation or support for how the federal government's alleged interest in interpreting the CSA in this litigation creates federal question jurisdiction.
[14] Opposition at 17–18.

may exercise jurisdiction over certain cases involving the CSA does not lead to the conclusion they should exercise jurisdiction over inherently state-law claims.

## IV.     The Court Should Not Defer Ruling on Delaware's Motion to Remand.

Finally, McKesson asks the Court to defer ruling on Delaware's Motion so that the MDL can rule on it instead.  McKesson's request is an attempt to relitigate its motion to stay.  As this Court has already expedited briefing on the current motion and has denied McKesson's attempt to stay the current proceedings, there is no reason to defer ruling on the pending motion.

McKesson asserts that the MDL is better positioned to rule on the pending motion. However, as illustrated by the cases cited throughout Delaware's briefing, individual district courts are perfectly suited to rule on the precise remand issues presented here.  *See, e.g.*, *West Virginia* ex rel. *Morrissey,* 2017 WL 357307.  Here, where there is no basis for federal question jurisdiction, there is no basis for the delay that deferring a decision to the MDL would cause.

**CONCLUSION**

For the reasons cited above, as well as those set forth in its Opening Brief, Delaware respectfully requests that this Court remand this matter to the Delaware Superior Court.


Date:  March 26, 2018                                    CONNOLLY GALLAGHER LLP

OF COUNSEL:

                                                          */s/ Ryan P. Newell*
Scott D. Gilbert                                          Ryan P. Newell (#4744)
Richard Shore                                             Kyle Evans Gay (#5752)
Mark A. Packman                                           The Brandywine Building
Michael B. Rush (#5061)                                   1000 West Street, Suite 1400
Jenna A. Hudson                                           Wilmington, DE 19801
GILBERT LLP                                               Telephone:  (302) 757-7300
1100 New York Avenue, NW, Suite 700                       Facsimile:  (302) 757-7299
Washington, DC 20005                                      rnewell@connollygallagher.com
gilberts@gotofirm.com                                     kgay@connollygallagher.com
shorer@gotofirm.com
packmanm@gotofirm.com
rushm@gotofirm.com

hudsonj@gotofirm.com

Richard W. Fields
FIELDS PLLC
1700 K Street, NW, Suite 810
Washington, DC 20006
fields@fieldslawpllc.com

*Attorneys for the State of Delaware,* ex rel.
*Matthew P. Denn, Attorney General of the*
*State of Delaware*